Tony VALLONE

v.

Leslie Ann Dours VALLONE.

No. C–556.

Supreme Court of Texas.

Dec. 31, 1982.

Rehearing Denied Feb. 9, 1983.

Piro & Lilly, Robert J. Piro and Ann J. Crawford, Houston, for petitioner.

Boswell, O'Toole, Davis & Pickering, J. Huey O'Toole and John D. Payne, Houston, for respondent.

RAY, Justice.

This is an appeal from a division of property in a divorce action. At issue is whether the trial court abused its discretion by not specifically considering the community's interest, if any, in the increase in value of

the separate property portion of stock in a closely-held corporation in which all of the corporation's stock was issued in the husband's name. The stock was originally received in exchange for both community and separate assets. The court of civil appeals held that the trial court, "in making a division of the estate, did not take into consideration the large increment to [the husband's] separate property by reason of community labor and as a result the division of the estate was manifestly unfair to [the wife]." 618 S.W.2d 820, 824. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

The holding of the court of civil appeals in this case conflicts with the holding in *Hale v. Hale,* 557 S.W.2d 614 (Tex.Civ.App. —Texarkana 1977, no writ). In *Hale,* the court held that a contribution of community labor should not be taken into account in determining the amount of reimbursement that may be owing to the community by the benefited separate estate. Under Tex.Rev. Civ.Stat.Ann. art. 1728 § 2, we have jurisdiction to review this case.

Tony and Leslie Vallone were married in 1966. During the first years of their marriage, Tony worked in a restaurant owned and operated by his father as a sole proprietorship. In January 1969, the assets of the restaurant were transferred to Tony from his father as a gift. Tony operated the restaurant as a sole proprietorship until its incorporation in August 1969. The initial capitalization consisted of $19,663 in assets. Included in the initial capital was the used restaurant equipment given to Tony by his father, valued at $9,365 (or slightly over 47% of the initial capital).

During the period beginning with the incorporation of the restaurant until the couple divorced, the business prospered. The restaurant business constituted the major asset of both the community estate and the husband's separate estate. Tony received approximately $200,000 per year as salary and bonus from the corporation. Many of the couple's personal transactions were handled through the corporation.

The trial court granted the divorce, awarded custody of the minor children to Tony, and filed findings of fact and conclusions of law in support of the division of property. The court found the business to be worth $1,000,000. Finding that 47% of its initial capitalization was traceable to Tony's separate estate, the trial court set aside a proportionate share of the corporate stock as Tony's separate property. The trial court then awarded Leslie 70% of the remaining stock as her share of the community interest in the corporation, subject to redemption provisions. The decree ordered Tony's Restaurant, Inc., to purchase Leslie's share of the stock for a cash payment of $77,000 and a $300,000 note personally guaranteed by Tony and secured by all of the stock in Tony's. The court of civil appeals calculated that Leslie received 51.4% of the net estate. Tony was ordered to assume all tax liabilities.

Leslie appealed the division of property. The court of civil appeals determined that the transfer of restaurant equipment from father to son was a gift, not a sale, and that the corporation was not operated as Tony's *alter ego.* But while further affirming the trial court's finding that 47% of the corporate stock was Tony's separate property, the court of civil appeals sustained Leslie's point of error that the trial court's division of the property was so manifestly unfair as to amount to an abuse of discretion, determining "that the court, in making a division of the estate, did not take into consideration the large increment to appellee's separate property by reason of community labor...." 618 S.W.2d at 824.

The case comes to us in the following posture: Did the trial court abuse its discretion by ignoring community rights and equities which might have existed in the corporation?

At trial, Leslie asserted that the increase in the value of the corporation's stock should be considered as part of the community, alleging that the corporation existed as Tony's *alter ego.* She further requested reimbursement if, to quote from her pleadings, "(1) money or property of one of the

petitioner's estates (separate or community); (2) has been used or expended to benefit the receiving estate (separate or community); (3) for which Petitioner's contributing estate received no quid pro quo; (4) thereby unjustly enriching the receiving estate."

■ Consideration of whether a corporation is an *alter ego* for purposes of determining whether assets held in the corporation's name should be treated as community property is an issue of fact from which the status of the property is determined. *Cockerham v. Cockerham,* 527 S.W.2d 162 (Tex. 1975); *Goetz v. Goetz,* 567 S.W.2d 892 (Tex. Civ.App.—Dallas 1978, no writ). The trial court and the court of civil appeals found that the restaurant corporation was not Tony's *alter ego.* No error of law has been correctly preserved on this point. Leslie's second cross-point states that the courts below erred in finding that the corporation was not the *alter ego* of Tony. For argument, Leslie adopts and incorporates by reference her point in her appellant's brief. The point was preserved in the court of civil appeals specifically as a "greater weight and preponderance of the evidence" point. A careful reading of the argument shows that the sum and substance of that point is directed towards a "greater weight and preponderance of the evidence" analysis. Authorities are cited to provide the framework in which the facts are to be construed. The court of civil appeals' opinion uses substantially the same *alter ego* test stated in Leslie's briefs. More importantly, Leslie's briefs in this Court do not assert that the court of civil appeals applied the *wrong* test or applied the correct test incorrectly. This leaves a factual determination which this Court does not have jurisdiction to decide. Similarly, Leslie challenged the characterization of the marital property in two points in her court of civil appeals brief. The first was a greater weight and preponderance of the evidence point and the second an insufficiency of the evidence point. The argument under the insufficiency point is clearly a *factual insufficiency* argument. We do not have jurisdiction to pass upon either of these points and are therefore bound by the

finding of the courts below that the corporation was not the *alter ego* of Tony. In this respect, no constructive fraud was perpetrated upon the community.

■ Characterization of property as separate, however, does not necessarily preclude the right to reimbursement. Questions concerning the right to reimbursement do not concern which estate owns legal or equitable title in certain property. Rather, such questions entail

the consideration of what is to be done with community property that by its very nature forms such a part of the separate estate of one spouse as not to be separable therefrom. The difficulty is not so much in deciding what is and what is not community property, but in deciding when and to what extent the separate estates should reimburse the community, and vice versa.

O. Speer, Texas Family Law § 22.38 (5th ed. 1976).

■ When separate property is combined with community time, talent and labor, and both the community and the separate estate make claim upon the increment, the courts are confronted with conflicting principles of marital property law. It is fundamental that any property or rights acquired by one of the spouses after marriage by toil, talent, industry or other productive faculty belongs to the community estate. Nevertheless, the law contemplates that a spouse may expend a reasonable amount of talent or labor in the management and preservation of his or her separate estate without impressing a community character upon that estate. *Norris v. Vaughn,* 152 Tex. 491, 260 S.W.2d 676 (1953); *Hardee v. Vincent,* 136 Tex. 99, 147 S.W.2d 1072 (1941).

■ The rule of reimbursement is purely an equitable one. *Colden v. Alexander,* 141 Tex. 134, 171 S.W.2d 328 (1943). It obtains when the community estate in some way improves the separate estate of one of the spouses (or vice versa). The right of reimbursement is not an interest in property or an enforceable debt, per se, but an

equitable right which arises upon dissolution of the marriage through death, divorce or annulment. *Burton v. Bell,* 380 S.W.2d 561 (Tex.1964); *Dakan v. Dakan,* 125 Tex. 305, 83 S.W.2d 620 (1935).

■■■ A right of reimbursement arises when the funds or assets of one estate are used to benefit and enhance another estate without itself receiving some benefit. *Dakan v. Dakan, supra.* We hold it also arises when community time, talent and labor are utilized to benefit and enhance a spouse's separate estate, beyond whatever care, attention, and expenditure are necessary for the proper maintenance and preservation of the separate estate, without the community receiving adequate compensation.[1] To the extent that *Hale v. Hale, supra,* held that the expenditure of community time, talent and labor may under no circumstances give rise to an equitable right of reimbursement in the community's favor, it is hereby disapproved.

■■■ The party claiming the right of reimbursement has the burden of pleading and proving that the expenditures and improvements were made and that they are reimbursable. *Lindsay v. Clayman, supra; Wachendorfer v. Wachendorfer,* 615 S.W.2d 852 (Tex.Civ.App.—Houston [1st] 1981, no writ); *West v. Austin National Bank,* 427 S.W.2d 906 (Tex.Civ.App.—San Antonio 1968, writ ref'd n.r.e.). By her first cause

of action, Leslie prayed for equitable reimbursement *if* community *funds* or *property* were used to benefit the separate estate of Tony to which end no compensation was had or received, thereby resulting in an unjust enrichment. As to this particular theory of recovery, the trial court found: "(3) The profits from ... Tony's Restaurant, Inc., have been used, in large measure, for the benefit of the community estate and to build the community estate." Leslie objected to this finding of fact. Her several objections to the findings of fact and conclusions of law, together with those she urged the court to adopt, are in no way referrable to the theory of reimbursement due to *time, talent* and *labor* expended by Tony on behalf of his separate estate to the detriment of the community estate. The only other causes of action pleaded by Leslie referrable to reimbursement are those of constructive fraud arising out of Tony's alleged operation of the corporation as his *alter ego.*

■■■ Reimbursement is not available as a matter of law, but lies within the discretion of the court. In the absence of pleadings either specifically for or referrable to reimbursement premised on uncompensated time, talent or labor, such recovery is waived and the failure of the trial court to consider the matter does not constitute error. *Burton v. Bell,* 380 S.W.2d 561,

---

1. Other community property states have formulated rules which permit the community to seek reimbursement for uncompensated community labors. Washington follows the rule that where a salary is paid to the spouse by a closely held corporation of which he owns all or substantially all of the stock, it is presumed that the community has been compensated for the services that spouse may have rendered. The enhanced value retains a separate character. *See Hamlin v. Merlino,* 44 Wash.2d 851, 272 P.2d 125, 129 (1954). In Arizona, the salary paid to the spouse must be fair and adequate, otherwise the entire increment in value will be deemed community property. *See Nace v. Nace,* 104 Ariz. 20, 448 P.2d 76 (1968). California applies either of two rules which provide for (1) allocation of a reasonable rate of return on the separate property to the separate estate and apportioning the remainder to the community, or (2) awarding the reasonable value of the spouse's services to the community. *See*

*Beam v. Bank of America,* 6 Cal.3d 12, 98 Cal.Rptr. 137, 490 P.2d 257 (1971). Nevada courts likewise apply both California tests. *See Johnson v. Johnson,* 89 Nev. 244, 510 P.2d 625 (1973). As a rule, New Mexico reimburses or allocates to the community the reasonable value of the spouse's labors. *See Katson v. Katson,* 43 N.M. 214, 89 P.2d 524 (1939). Idaho courts are in accord. They consider a number of factors to determine if the salary paid the spouse is a fair compensation for labor expended, including the nature and size of the incorporated business, number of employees, and extent of the spouse's involvement and the growth pattern of the business. If the spouse has not taken an adequate compensation from the corporation, the courts will award the community the difference between the compensation received and what the corporation would have had to pay an employee to perform the same services. *See Speer v. Quinlan,* 96 Idaho 119, 525 P.2d 314 (1974).

567 (Tex.1964); *Wachendorfer v. Wachendorfer, supra; Gaston v. Gaston,* 608 S.W.2d 332, 335 (Tex.Civ.App.—Tyler 1980, no writ); *Pruske v. Pruske,* 601 S.W.2d 746, 749 (Tex.Civ.App.—Austin 1980, writ dism'd).

Section 3.63 of the Texas Family Code affords the trial court wide latitude and discretion in dividing the community estate of the parties upon dissolution of their marriage. *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137 (Tex.1977); *McKnight v. McKnight,* 543 S.W.2d 863 (Tex.1976). In reviewing the actions of the trial court, the appellate court will presume that the trial court exercised its discretion properly. *Murff v. Murff,* 615 S.W.2d 696 (Tex.1981). The trial court's discretion will not be disturbed on appeal unless a clear abuse has been shown. *Cockerham v. Cockerham, supra; Bell v. Bell,* 513 S.W.2d 20 (Tex.1974).

We have carefully considered the entire record of this case to determine whether the trial court abused its discretion in dividing the community estate of the parties and have found no such abuse. *Humphrey v. Humphrey,* 593 S.W.2d 824 (Tex.Civ.App.—Houston [14th] 1980, writ dism'd). We therefore reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

SONDOCK, J., dissents in an opinion in which POPE, C.J., and McGEE, J., join.

BARROW, J., dissents.

SONDOCK, Justice, dissenting.

I respectfully dissent. I believe that the majority has done the Bar a disservice by deciding this case on the basis of abuse of discretion. In applying this principle, the majority has confused discretion in *division* of property with discretion in *classifying* property. I recognize that a trial court has broad discretion in ordering a division of the property of the parties and that the division does not have to be on a 50/50 basis. A trial court, however, has no discretion in classifying property. I respectfully submit that it is impossible to decide whether there has been an abuse of discretion in

division of the estate of the parties until this Court determines that a proper classification of the marital property has been made by the trial court.

The question presented by this case is: If during marriage, corporate stock owned by one spouse as separate property increases in value due to the time, talent, and toil of one or both spouses, does that increased value belong to the community estate or is it the separate property of the spouse who owns the stock? The increase is community property.

The majority recognizes as "fundamental" the proposition that "any property or rights acquired by one of the spouses after marriage by toil, talent, industry or other productive faculty belongs to the community estate." However, contrary to the mandate of *Norris v. Vaughan,* 152 Tex. 491, 260 S.W.2d 676 (1953), the majority indicates that the increase in the value of the stock in Tony's Restaurant, Inc., which the lower courts attributed to the time, talent, and toil of the spouses, is the separate property of the husband. The majority refuses to address this issue directly. They obviously have concluded, however, that the increase is the husband's separate property because they hold that the trial court did not abuse its discretion in dividing the property of the parties.

The majority further states that "when separate property is combined with community time, talent, and labor, and both the community and the separate estate make claim upon the increment, the courts are confronted with conflicting principles of marital property law." What the majority considers to be conflicting principles are the provisions in *Norris v. Vaughan, supra,* that: (1) classify all property acquired by time, talent, and toil, and (2) permit a spouse to expend a reasonable amount of time in the preservation of a separate estate. I submit that these are not conflicting principles of law. The provision that a spouse may preserve his separate property is simply a limitation on the general rule that requires spouses to direct their energy

toward building the community estate rather than benefiting their individual interests. It defies logic to state that this Court in *Norris v. Vaughan, supra,* intended the definition of reasonable time to be interpreted to allow a spouse to spend 47% of his time building his separate estate. During marriage, the law will not permit a spouse to devote 100% of his time, talent, and toil on his own behalf in the operation of a sole proprietorship or a partnership and then claim 47% of the benefits as separate property. This conduct does not become acceptable in the eyes of the law merely because the same spouse does the same act through a corporate vehicle of his own creation.

The majority has attempted to blend two distinct rules of law into one: 1) all earnings of the spouses belong to the community, *Norris v. Vaughan, supra;* and 2) one estate does not have the right to benefit at the expense of the other estate without providing reasonable compensation for the benefit derived, *Colden v. Alexander,* 141 Tex. 134, 171 S.W.2d 328 (1943); *Dakan v. Dakan,* 125 Tex. 305, 83 S.W.2d 620 (1935). The distinction between these rules may be described as the difference between a right of ownership and a right of reimbursement. The former is a legal right involving only the community estate and its ownership of all the earnings of the spouses; the latter is an equitable right involving both estates and the equities that exist between them.

In this case, the community estate owns all the profits and earnings of the business regardless of whether the community receives some of the profit as salary because the laws of this State mandate that every dollar that either spouse earns is community property. The majority apparently finds solace in its determination that the community received "adequate compensation." However, what is adequate compensation is not the issue and is irrelevant here. Most people would agree that $200,000 annual salary is adequate compensation for a suc-

cessful basketball player, actress, or restauranteur. When these individuals actually earn $1,000,000 per year, the entire $1,000,000 belongs to the community estate, not just the amount an appellate court may deem "adequate compensation." The rule is not that a portion of the earnings found to be adequate compensation for labor belongs to the community estate. The rule always has been that earnings of a spouse—all of the earnings—are community property. The result in this case should be no different.

The position of the majority ignores the basic principles underlying the community property system. Although the specific question presented by this case has never been answered by this Court, the underlying principle has been addressed many times. The only difference here is that the property involved—earnings/profits of the business—has been cloaked in corporate form.

During the marriage, Tony's Restaurant was started as a sole proprietorship. Later, the business was incorporated. Unidentified used restaurant equipment, which had a depreciated value of $9,365 in 1969, was transferred to the corporation as a part of the initial capitalization of $19,663. The trial court found that this used equipment was a gift to the husband from his father.[1] All of the stock was registered in the name of the husband and issued in one certificate, which does not bear the "sole and separate property" legend. At the time of divorce, the trial court upheld the husband's claim that 47% of the stock *at its present value* of $470,000 belonged to him as his sole and separate property.

Assuming that the evidence is sufficient to support the finding that 47% of the stock belonged to the husband as his sole and separate property,[2] the trial court erred in classifying the *increase in value* of that stock from $9,365 to $470,000 as the husband's separate property. Even though a

---

1. The record does not support the majority's statement that the "assets of the restaurant were transferred to Tony."

2. 618 S.W.2d at 822. The court of civil appeals refers to the evidence as being "scant." This is a classification that this opinion should not be construed as approving.

business is created during the marriage from separate funds, the earnings of the business that result from a spouse's devotion of 100% of his or her time, talent, and toil belong to the community estate.

The issue of classifying the increase in the value of separate property as community property has been addressed by the Texas courts in various contexts.[3] The increase from a spouse's operation of a business always has been considered community property, even when the business itself was owned by one spouse prior to the marriage and thus was the separate property of that spouse.[4] *Epperson v. Jones,* 65 Tex. 425 (1886). In *Epperson,* this Court held that profits from the operation of a business are "community property, and cannot, therefore, be said to increase . . . [spouse's] separate estate to the extent of a single dollar." *Id.* at 428. *See Moss v. Gibbs,* 370 S.W.2d 452 (Tex.1963); *Hardee v. Vincent,* 136 Tex. 99, 147 S.W.2d 1072 (Tex.1941); *Smith v. Bailey,* 66 Tex. 553, 1 S.W. 627 (1886); *Cleveland v. Cole,* 65 Tex. 402 (1885); *Green v. Ferguson,* 62 Tex. 525 (1884).

As this Court explained as early as 1848, "[U]nder the laws, the services of the family are always to be rendered for the benefit of the community, and not for its individual members. . . ." *Yates v. Houston,* 3 Tex. 433, 455 (1848). *See Cleveland v. Cole, supra,* at 405. In *DeBlane v. Lynch & Co.,* 23 Tex. 25 (1859), the Court stated:

> The principle which lies at the foundation of the whole system of community property is, that whatever is acquired by the joint efforts of the husband and wife, shall be their common property. It would be unnecessary consumption of time, to quote authorities for this proposition.

*Id.* at 29. Over 100 years ago, therefore, this Court acknowledged as well-established law in Texas the rule that property acquired by the joint effort of a husband and wife is community property. Additionally, the *DeBlane* Court concluded that to hold otherwise would "lead to results wholly inconsistent with the recognized principles of law upon which the system of community property is based," and would lead to "inequitable and unreasonable" results. *Id.* at 28. *See also First National Bank of Lewisville v. Davis,* 5 S.W.2d 753 (Tex.Comm'n App.1928, judgm't adopted). This position was affirmed in *Norris v. Vaughan,* 152 Tex. 491, 260 S.W.2d 676 (Tex.1953). "Any property or rights acquired by one of the spouses after marriage by toil, talent, industry or other productive faculty is community property." *Id.* at 501, 260 S.W.2d at 682. *See also In re Marriage of York,* 613 S.W.2d 764 (Tex.Civ.App.—Amarillo 1981, writ ref'd w.o.j.); *Logan v. Logan,* 112 S.W.2d 515 (Tex.Civ.App.—Amarillo 1937, writ dism'd).

Later, in *Graham v. Franco,* 488 S.W.2d 390 (Tex.1972), this Court recognized that *Norris v. Vaughan, supra,* applied:

> [T]he affirmative test; i.e., that property is community which is acquired by the work, efforts or labor of the spouses or their agents, as income from their property, or as a gift to the community. Such property, acquired by the joint efforts of the spouses, was regarded as acquired by 'onerous title' and belonged to the community.

*Id.* at 392. *See Epperson v. Jones, supra; DeBlane v. Lynch, supra; Smith v. Strahan,*

---

3. *See Arnold v. Leonard,* 114 Tex. 535, 273 S.W. 799 (1925) (rents and revenues from separate property); *Dixon v. Sanderson,* 72 Tex. 359, 10 S.W. 535 (1888) (profits); *Craxton, Wood & Co. v. Ryan,* 3 Tex.Civ.Cas. 439 (1888) (bricks produced from a spouse's separate property); *Braden v. Gose,* 57 Tex. 37 (1882) (interest received on money in a separate bank account); *White v. Lynch & Co.,* 26 Tex. 195 (1862) (timber produced from trees grown on separate real property); *DeBlane v. Lynch,* 23 Tex. 25 (1859) (crops grown on separate realty).

4. The increase in the instant case is distinguishable from an "inherent" increase in the value of separate property. The court of civil appeals noted: "The increase in the value of the stock . . . was directly attributable to the labors of one or both of the community partners. . . . All of the increase is attributable to the labor and skill of one (and probably both) of the spouses. This is clearly distinguishable . . . [from a situation where] separate property . . . increased in value because of reasons other than the time and effort of one or both of the spouses." 618 S.W.2d at 823-24.

16 Tex. 314 (1856); W. DeFuniak, *Principles Of Community Property* § 62 (1971); C. Moynihan, *Community Property, 2 American Law Of Property* § 7.16 (1952).

Texas courts have considered this principle so essential to the community property system that even fringe benefits arising from a spouse's labor, such as profit sharing, pension and retirement plans, including those that are noncontributing or are not vested or reduced to possession at the time of divorce, are considered community property. *Cearley v. Cearley,* 544 S.W.2d 661 (Tex.1976); *Busby v. Busby,* 457 S.W.2d 551 (Tex.1970); *Herring v. Blakeley,* 385 S.W.2d 843 (Tex.1965); *Mora v. Mora,* 429 S.W.2d 660 (Tex.Civ.App.—San Antonio 1968, writ dism'd); *Kirkham v. Kirkham,* 335 S.W.2d 393 (Tex.Civ.App.—San Antonio 1960, no writ).

Petitioner in this case, the husband, argues that the case of *Scofield v. Weiss,* 131 F.2d 631 (5th Cir.1942), is authority for the proposition that the increase in a business that is due to time, talent, and toil is not community property. *Scofield* does indicate that "under Texas law" the increase in value of corporate stock owned as separate property remains separate even though the increased value is attributable to the efforts of a spouse. The *Scofield* case, however, fails to cite any "Texas law" and only amounts to "an *Erie*-educated guess." *See Allstate Ins. Co. v. Mole,* 414 F.2d 204, 205 (5th Cir.1969). In the instant case, any reliance by Petitioner on a Fifth Circuit case that purports to enunciate a principle of law that is unsupported by Texas case authority is misplaced.

The majority justifies its holding that the trial court did not abuse its discretion in dividing the property by relying on the court of civil appeals' statement that the trial court awarded the wife 51.4% of the community estate. This overlooks the fact that the court of civil appeals remanded this case to permit the trial court to correct its error in excluding the increase in the value of the separate stock from the property to be divided. The majority does not recognize that if the trial court had properly classified the increase in the value of the stock, then the community property awarded to the wife would only represent approximately 30% of the parties' estate.

I cannot agree that awarding the wife 30% of the community property comports with the "just and right" requirement of section 3.63 of the Texas Family Code in a case in which the divorce was granted on a no-fault basis and the parties agreed on child custody. Two other material factors that the trial court should have considered in making its division were the respective earning capacities and business opportunities of the parties. In this case, the husband has an earning capacity of more than twenty times that of the wife and the difference in the business opportunities available to the respective parties is incalculable. More important, however, is the fact that included in the property awarded to the husband is the "goose that lays the golden egg"—Tony's restaurant itself. Additionally, under the trial court's classification, the husband has a separate estate of over $470,000 while the wife has none except gifts of personal effects.

When a trial court misclassifies over $450,000, or almost half of what the court of civil appeals noted was the largest community asset, it is impossible to conclude that the court did not commit reversible error. In effect, the trial judge eliminated over $450,000 from consideration as community property. This situation is not unlike the recent case of *In re Marriage of York,* 613 S.W.2d 764 (Tex.Civ.App.—Amarillo 1981, writ dism'd w.o.j.). In *York,* the court of civil appeals concluded that the trial court had misclassified profits in a closely-held corporation operated by the husband and reversed the trial court's division *solely* on that basis, holding: "because ... [the court divided the property] on an erroneous theory and excluded from consideration a significant amount of community property, it abused its discretion." 613 S.W.2d at 771.

If Tony's Restaurant, Inc., had continued its operation as a sole proprietorship, the form in which it was originally organized

during the marriage,[5] there could be no doubt that the entire increase in the value of the business would be community property. *See Hardee v. Vincent, supra; Smith v. Bailey, supra; Epperson v. Jones, supra; Green v. Ferguson, supra.* Furthermore, in that situation, if the husband had alleged that part of the business was his separate property, it would be incumbent upon him to prove so by tracing. The principle of tracing enables a spouse to identify and preserve his separate property and prevent forfeiture. Tracing, however, cannot be permitted to allow a spouse to alter the form of ownership and thereby change community property to separate property to the detriment of the community.

Section 5.02 of the Family Code provides that all property possessed by either spouse during or on dissolution of marriage is presumed to be community property. The spouse asserting otherwise must prove the contrary by satisfactory evidence. *Tarver v. Tarver,* 394 S.W.2d 780, 783 (Tex.1965); *Schmidt v. Huppman,* 73 Tex. 112, 11 S.W. 175 (1889); *Chapman v. Allen,* 15 Tex. 278, 284 (1855). The burden of proof in this case rested on the husband to trace that which he claimed as his separate property. The court of civil appeals' holding that the husband's "duty to trace extended no farther than to prove that his separate property was exchanged for a certain percentage of the total of the capital stock and ... [that] the stock was held by him since the time of issuance"[6] should apply only to the original value of the separate stock. The husband failed to meet his tracing burden with respect to the increased value of the stock.[7]

In *Hardee v. Vincent,* 136 Tex. 99, 147 S.W.2d 1072 (Tex.1941), the Court noted that classification of the increased stock of merchandise and fixtures in the family business depended on whether items were purchased with profits from the business or capital investment. *Id.* at 102, 147 S.W.2d at 1073. The Court held that the burden to trace rested on the spouse claiming the business as separate property:

It was incumbent upon ... [the wife] to show that the money used in the purchase of additional stocks of merchandise and fixtures came out of her separate estate. She attempted to do this by showing that the business belonged to her separate estate at the time of conveyances to her.... The case was tried ... some two years and three months after the conveyances from ... [her husband.] During such time, the stocks of merchandise and fixtures were bought and sold, thus presenting the all important issue as to whether the money used in the purchases of such additional stocks of merchandise and fixtures was profits from the business or capital investment.

Absent proof that the money so used came out of the capital investment, ... the presumption of the law, that property acquired by either husband or wife during marriage belongs to the community estate of the husband and wife, controls in the present case.

*Id.* at 102–03, 147 S.W.2d at 1074.

In *Blumer v. Kallison,* 297 S.W.2d 898, 900–01 (Tex.Civ.App.—San Antonio 1956, writ ref'd n.r.e.) the court observed that a "modern and accurate" bookkeeping system distinguished profits and rents belonging to the community from the wife's separate property in a manner that made her capital "readily traceable." *Id.* at 900–01. The separate property could be identified and calculated separately from the community property.[8]

---

**5.** After incorporation, the business continued for all practical purposes to be operated as a sole proprietorship. 618 S.W.2d at 824.

**6.** 618 S.W.2d at 822–23.

**7.** The husband's records reflect that over $700,-000 of the corporation's $1,000,000 value consisted of retained earnings.

**8.** The majority cites *Humphrey v. Humphrey,* 593 S.W.2d 824 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ dism'd), for the proposition that no abuse of discretion occurred in this case. In *Humphrey,* the court noted that the husband kept detailed business records and could, therefore, trace his separate property. *Id.* at 826. Moreover, the case did not involve a misclassification problem because the business was not run like a sole proprietorship.

In the instant case, the husband did not keep business records similar to those in *Blumer.* Here, the court of civil appeals expressly noted:

There is little doubt that in many respects the financial and business end of the corporation was operated with great informality. Cash was taken from the business when it was needed for personal expenses; neither officer nor directors' meetings were held on a regular basis; and the corporation was run by the husband, rather than by its officers or a board of directors.

618 S.W.2d 824. In short, the husband made no attempt to trace the increase in his separate property, either in specie, through mutation, or by keeping detailed business records. Instead, in this case, the simple act of incorporation has been treated as a substitute for the well-recognized tracing requirement.

This cannot be done.

A spouse who incorporates a family business with capital claimed as his or her separate property cannot change the community character of profits later earned and retained. By electing to elevate form over substance, the majority has created an option of election for a spouse, who by a simple ex parte paper transaction will be able to transform community earnings into separate property. Clearly, such an unauthorized mode of reclassifying property is contrary to the laws of this State.

Texas courts have prohibited spouses from changing community property into separate property by contract, *King v. Bruce,* 145 Tex. 647, 201 S.W.2d 803 (1947), or agreement, *Strickland v. Wester,* 131 Tex. 23, 112 S.W.2d 1047 (1938); *Gorman v. Gause,* 56 S.W.2d 855 (Tex.Comm'n App. 1933, judgm't adopted); *Cox v. Miller,* 54 Tex. 16 (1880), or disclaimer, *Hardee v. Vincent, supra.* Until the 1948 amendment to article XV, section 16 of the Texas Constitution, spouses could not even partition community property. To the extent that

the parties today can effectuate a change in the character of property from community to separate, such can be done only by strict compliance with the law. *Maples v. Nimitz,* 615 S.W.2d 690 (Tex.1981); *Hilley v. Hilley,* 161 Tex. 569, 342 S.W.2d 565 (1961). Allowing a spouse to make the type of election the majority opinion creates will have ramifications of considerable magnitude given the widespread use of the corporate entity in the modern business world.

Basic principles and policies of community property support the proposition that the earnings of a spouse-owned business to which one or both spouses devote time, talent, and toil should be subject to division on divorce. The majority attempts to justify its contrary holding by relying on a well-recognized authority in this field. L. Simpkins, *Texas Family Law* (Speer's 5th Ed. 1976). The language quoted by the majority, however, is incomplete, inapplicable, and misleading. In fact, this treatise irrefutably classifies the increase in the value of the stock in a closely-held corporation in the same manner I advocate:

It would appear, in the case of either a partnership or a closely held corporation, that an increase in the value of the corporate stock, or in the value of the partnership, should be attributable to and become a part of the community estate, if the increase in value is a result of the time, effort, and talent of the community expended on such corporate or partnership business. Although this would necessitate an inquiry into the value of the corporation or partnership, as well as an inquiry into the reasons for the increase in value, it is suggested that in order to protect and preserve the community interest of the spouses such inquiries are necessary.

L. Simpkins, *Texas Family Law* § 15:50, at 115 (Speer's 5th Ed.1976).

Section 3.63 of the Family Code mandates that in a property division involving a business that for practical purposes is no differ-

---

The husband was not the only corporate officer and others were actively involved in the business.

ent from a sole proprietorship, no reason exists to treat the corporation as anything other than "merely the husband's instrumentality for the conduct of his business affairs or a method of operation therefor; indeed that it might be viewed as no more than a method of accounting." *Dillingham v. Dillingham, supra,* at 462. (Emphasis added). Consequently, I would hold that in a divorce case where a non-owner spouse proves that a spouse's time, talent, and toil are primarily responsible for the increase in the value of a business operated as a corporation, *the increase in the value* is community property, even though a business or a part thereof is separate property.[9]

Rather than address the central issue of whether the form in which a spouse transacts business can prevail over substantive community rights in profits earned by community labor, the majority, instead, has focused on two non-existent procedural technicalities. First, I disagree with the majority opinion in its discussion of the pleadings in this case. In my opinion, the wife's nineteen page pleading sufficiently sets forth her claims for relief. Even if this were not the case, the husband failed to file special exceptions and made no objection to the introduction of evidence in the trial of the cause. In short, if the wife's pleadings in this cause were insufficient, the husband has failed to preserve this error. *Pruske v. Pruske,* 601 S.W.2d 746, 749 (Tex.Civ.App.—Austin, 1980 writ dism'd), cited by the majority, together with the authorities cited in *Pruske* do not support the majority opinion.

Further, the other authorities cited by the majority are clearly distinguishable from the facts of this case. Neither *Lindsay v. Clayman, supra,* nor *Burton v. Bell, supra,* were divorce cases and insufficiency

of pleadings was neither dispositive of the issues involved in those cases nor was it a cause for rendition in either. In both *Burton* and *Lindsay,* it is clear that it was, in fact, the lack of proof (*Burton v. Bell, supra*) or failure to secure a proper jury finding (*Lindsay v. Clayman, supra*) and not any pleading insufficiency that formed the basis of the court's holding.

Although the majority cites *West v. Austin National Bank,* 427 S.W.2d 906 (Tex.Civ. App.—San Antonio 1968 writ ref'd n.r.e.) as authority for its statement that "the party claiming the right of reimbursement has the burden of pleading and proving that the expenditures and improvements were made and that they are reimbursable," I respectfully submit that the case has no application here and that the word "pleading" does not even appear in the opinion.

*Wachendorfer v. Wachendorfer,* 615 S.W.2d 852 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ) is a family law case which espouses the rule of specific pleading which the majority has apparently adopted today. *Wachendorfer,* however, is clearly distinguishable on its facts in that the court expressly noted that "during the trial, the [husband's] lawyer objected to the admission of . . . testimony . . . but the wife did not amend her pleadings. [The husband's] counsel also preserved error by objecting to the submission [of an] issue . . . on the ground that [wife's] pleadings did not contain any allegation as to reimbursement." *Id.* at 854.

Furthermore, I submit that this Court, in enunciating a rule requiring specific pleadings in family law matters, has effectively overruled what I believe has been the generally accepted rule for pleading in this area. The attitude toward pleading in di-

---

9. Since no point of error was granted on the alter ego issue, I deem it inappropriate to discuss the conflict currently existing among courts of appeals in this area. *Compare Goetz v. Goetz,* 567 S.W.2d 892 (Tex.Civ.App.—Dallas 1978, no writ) *and Humphrey v. Humphrey,* 593 S.W.2d 824 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ dism'd) *with Dillingham v. Dillingham,* 434 S.W.2d 459 (Tex.Civ.App.—Ft. Worth 1968, writ dism'd) *and Bell v. Bell,* 504 S.W.2d 610 (Tex.Civ.App.—Beaumont), *rev'd*

*on other grounds,* 513 S.W.2d 20 (Tex.1974). However, in response to the majority's statements in this area, I feel compelled to suggest that this Court adopt a legal standard that does not revolve around a factual finding of fraud for divorce cases in which a business would be classified as a sole proprietorship but for the fact of incorporation. This is obviously one of the "exceptional situations" referred to in *Pace Corp. v. Jackson,* 155 Tex. 179, 284 S.W.2d 340 (1955).

vorce cases always has been liberal. Tests of sufficiency of pleadings in divorce cases have differed from that of cases in other areas. "The general rule as to the sufficiency of pleadings and quantum of proof applicable to civil cases generally does not apply to divorce cases in this state." *Cohen v. Cohen,* 194 S.W.2d 273, 275 (Tex.Civ.App. —Austin 1946, no writ). *See Uranga v. Uranga,* 527 S.W.2d 761, 763 (Tex.Civ.App. —San Antonio 1975, writ dism'd); *Zaruba v. Zaruba,* 498 S.W.2d 695, 698 (Tex.Civ. App.—Corpus Christi 1973, writ dism'd); *Lindsey v. Lindsey,* 228 S.W.2d 878, 879 (Tex.Civ.App.—Amarillo 1950, no writ). Further, in a divorce suit, the trial court may construe the pleadings of the parties with regard to property division more liberally than in other civil cases. *Lindsey v. Lindsey,* 564 S.W.2d 143, 145 (Tex.Civ.App. —Austin 1978, no writ); *Poulter v. Poulter,* 565 S.W.2d 107, 110–11 (Tex.Civ.App.—Tyler 1978, no writ); *Bagby v. Bagby,* 186 S.W.2d 702, 704 (Tex.Civ.App.—Amarillo 1945, no writ); *Fain v. Fain,* 6 S.W.2d 403, 406 (Tex.Civ.App.—Galveston 1928, writ dism'd).

There is a reason for the difference. For example, there is no true default judgment in a divorce suit. Even though the defendant fails to answer, full and satisfactory evidence must still be presented to warrant the granting of a divorce. General pleadings are encouraged and allegations of evidentiary facts are to be stricken from the pleadings. Tex.Fam.Code Ann. § 3.52 (1975). A defendant (respondent) "need not answer on oath, and the petition shall not be taken as confessed for want of an answer." Tex.Fam.Code Ann. § 3.53 (1975). The majority's holding will create confusion with the provisions of § 3.52 and § 3.53 of the Family Code and make it extremely difficult, if not impossible, for trial judges to continue to follow the mandate of § 3.63 of the Family Code.

Second, I cannot agree with the formalistic proposition that the wife's arguments do not adequately preserve the legal question of disregarding a wholly-owned corporation to divide community profits. This Court has always had a strong policy against elevating form over substance when construing points of error. The seminal case in this area, *Fambrough v. Wagley,* 140 Tex. 577, 169 S.W.2d 478 (Tex.1943), provides a clear mandate for construing the parties' points of error and arguments liberally in order to reach the merits of an issue. In *Fambrough* the Court stated:

> Our present briefing rules were adopted for the purpose of simplifying the briefing of cases so that greater attention will be devoted to the presentation of the merits of the appeal, and less attention given to the mechanics of the brief. The object of a "point" in the brief, as provided for in Rule 418, is to call the Court's attention to the questions raised and discussed in the brief. It is intended that the "point" shall be short or in few words. It is not necessary that a "point" be complete within itself, in the sense that it must, on its face, show that the matter complained of presents reversible error. If a "point" is sufficient to direct the Court's attention to the matter complained of, the Court will look to the "point" and the statement and argument thereunder to determine the question of reversible error. *Simply stated, the Court will pass on both the sufficiency and the merits of the "point" in the light of the statement and argument thereunder.*

169 S.W.2d at 482. (Emphasis added.)

As recently as 1980, the Tyler Court of Appeals, for example, considered the *Fambrough* directive as requiring that court to reach the merits in a divorce case not unlike the case at bar. In *Gaston v. Gaston,* 608 S.W.2d 332 (Tex.Civ.App.—Tyler 1980, no writ), a case cited in the majority opinion, the Tyler court noted that the wife neither pleaded a potential right to reimbursement nor asserted such a right before the court of appeals. Nonetheless, the Tyler court considered the claim, stating: "Since, after reading appellant's brief, appellant's first point could be liberally construed as making a possible claim for reimbursement, we feel that, in accordance with our supreme court's directive in *Fambough* ... [sic], we

should at least address the question." 608 S.W.2d at 335.

The legal arguments in the instant case have been properly preserved and well presented. In fact, one of the wife's cross-points in this Court presents the argument, part of which is the synthesis of my dissenting opinion:

> CROSS–POINT I: The trial court and the Court of Appeals both erred in their finding that 47% of the stock in Tony's Restaurant, Inc., as well as the total value thereof, is the separate property of TONY VALLONE.

It is inconceivable that the majority could possibly construe this Cross-Point as presenting only "factual insufficiency" questions.

An integral part of the foundation of the community property system is the principle that "under the laws, the services of the family are always rendered for the benefit of the community, and not for its individual members." *Yates v. Houston, supra,* at 435. The community property system cannot continue to function as the framework for adjusting marital rights and responsibilities if Texas courts ignore this principle, either directly or through procedural technicalities. "[C]ommunity interests . . . [must be] protected with jealous vigilance." *Id.* The mere formation of a corporate entity, a legal fiction, cannot be permitted to create an obstacle to a critical, equitable or proper analysis of the status of marital property. Ownership of a business in corporate form may permit ownership of the stock as separate property, but it does not follow that the increase in the value of the stock that is due to time, talent and toil of a spouse is also the separate property of the spouse.

The error of the trial court in this case was in failing to classify properly the increase in the value of the restaurant stock as community property. The increase in the stock's value from $9,365 to $470,000 constituted 47% of what the court of civil appeals indicated was "by far the largest asset of the community." Since the trial court failed to classify property with a value of over $450,000 as community property, it follows that the trial court's division of the parties' community property was erroneous.

I would affirm the judgment of the court of civil appeals and reverse and remand the cause to the trial court for a division of the community estate in accordance with the principles of law set out in this opinion.

POPE, C.J., and McGEE, J., join in this dissent.

BARROW, Justice, dissenting.

I respectfully dissent. I agree with the dissenting opinion of Justice Sondock, but write to point out my specific disagreement with the majority opinion.

All members of this Court agree that property acquired during marriage by the toil, talent, industry or other productive faculty of either spouse belongs to the community estate. We also agree that this rule applies with equal force to the increase of separate property which arises as a result of community effort.

The issue upon which this Court is divided is whether the trial court abused its discretion in its division of the Vallones' community estate. A trial court is required to consider all community property owned by the spouses at the time of divorce when it divides the community estate pursuant to § 3.63 of the Family Code. *See Cameron v. Cameron,* 641 S.W.2d 210 (Tex.1982). The division does not have to be equal and the court has broad discretion in its division of the community property. *Bell v. Bell,* 513 S.W.2d 20 (Tex.1974). Here, however, the trial court erroneously found 47% of the current value of the couple's principal asset, i.e., Tony's Restaurant, was separate property and thus not subject to division or the exercise of its discretion. Considering the overall property division between the parties, I cannot agree that this erroneous characterization of such a significant part of the community estate was harmless error.

Furthermore, I do not agree that this error was not properly raised by the wife. A fair reading of this record clearly demon-

strates that the basic area of dispute in the trial court, court of civil appeals and before us was the determination and valuation of the community interest in Tony's Restaurant. All courts were apprised of her complaint that the substantial increase in the valuation of Tony's Restaurant during the marriage was directly related to community effort.

I would reverse and remand the cause to the trial court for a division of the community estate after consideration of *all* community assets.